Williams, Judge,
delivered the opinion of the court:
This matter comes before the Court of Claims under a special act of Congress, approved July 3, 1926, entitled, “An act for the relief of the village of Harbor Springs, Michigan,” which reads as follows:
“Be it enacted by the Senate and the House of Representatives of the United States of America in Congress assembled, That the claim of the village of Harbor Springs, Michigan, for reimbursement for the payment of judgment rendered by the United States District Court, Western District of Michigan, against said village of Harbor Springs, Michigan, on account of the death of Ernest H. Haynes, an employee of the Department of Agriculture, is hereby referred to the Court of Claims for determination of the facts as to the. liability of the United States as a tort-feasor on account of the death of the said Ernest H. Haynes.”
The United States not being suable in actions sounding in tort, the plaintiff can not maintain a suit against it, as a joint tort-feasor, for reimbursement for the payment of the judgment rendered by the United States District Court of Western District of Michigan against it on account of the death of Ernest H. Haynes, an employee of the United States Department of Agriculture,
The plaintiff, therefore, presented its claim for reimbursement to Congress, and the matter has by the act of reference been submitted to this court for “ determination *44 of the facts as to the liability of the United States as a tort-feasor on account of the death of the said Ernest H. Haynes.”
The construction the court places on the act of reference is that Congress in submitting the matter desired the court to make a judicial investigation into the facts and circumstances surrounding the death of Haynes, and to determine from such facts and circumstances whether or not the United States was at fault and guilty of such negligence in relation to the conditions and causes resulting in his death as would make it legally liable as a tort-feasor, if it were a suable person.
The plaintiff does not deny that it was at fault, and a tort-feasor, and as such legally liable on account of Haynes’ death. It claims, however, that the defendant was also at fault, and that its negligence contributed to the death of Haynes. It contends that the death of Haynes resulted from the concurrent maintenance of the plaintiff’s unprotected high-tension wire, and the ladder of the defendant’s signal tower in such relation one to the other that a person ascending the ladder would, of necessity, come in contact with such wire; that this wrongful act was within the concurrent common knowledge of both the plaintiff and the defendant, each knowing the wire was unprotected, highly charged, and dangerous, and that it was the common duty of both to abate such danger.
It is particularly urged, also, that the defendant was at fault because its display man, having charge of the tower and knowing the danger involved in ascending the ladder, because of its close proximity to the plaintiff’s unprotected highly charged wire, permitted Haynes to go alone to the tower and ascend the ladder for the purpose of making an inspection of it without informing him of such danger.
In Bishop on Noncontract Law, it is stated (section 518):
“ The rule of law is that a person contributing to a tort, whether his fellow contributors are men, natural or other forces, or things, is responsible for the whole, the same as though he had done all without help.”
Wharton’s Law of Negligence (section 395) says:
“ The comparative degrees in the culpability of the two will not affect the liability of either. If both were negligent *45 in a manner contributing to the result, they are liable, jointly and severally.”
The rule is that the creation of joint liability in tort does not depend wholly upon proof that the same act of wrongdoing was participated in by both tort-feasors, or that they were in concert, had a common intent, or were engaged in a joint undertaking.
In Brown v. Coxe Bros. & Co. et al., 75 Fed. 689, it was held:
“ The rule under which parties become jointly liable as tort-feasors extends beyond acts or omissions which are designedly cooperative, and beyond any relation between the wrongdoers. If their acts of negligence, however separate and distinct in themselves, are concurrent in producing the injury, their liability is joint as well as several. 1 Suth. Dam. 212. Each becomes liable because of his neglect of duty, and they are jointly liable for the single injury inflicted because the acts or omissions of both have contributed to it.”
Applying this rule to the facts presented in the case before us, it seems clear the negligence of the defendant was a direct contributing cause to the death of Haynes. Notwithstanding the glaring and inexcusable negligence of the plaintiff in permitting its unprotected charged wire to be and. remain in dangerous proximity to the ladder of the defendant’s display tower, the death of Haynes would not have occurred had the Government and its agents not also have been guilty of negligence. Two inescapable duties devolved on the defendant in relation to the operation of its signal tower. (1) To provide a safe place for its employees to work in the performance of their duties, and (2) to warn them of any dangerous condition that might imperil their safety in the performance of such duties. These obligations the defendant could neither evade nor assign to another, and were incumbent upon it without respect to the negligence of anyone else.
Under the facts shown it failed in the performance of each of these duties. Assuming that the plaintiff was primarily at fault in creating the situation in which its unprotected wires were in dangerous proximity to the ladder on *46 the defendant’s tower, that fact does not release the defendant from its duty to provide for its employees a safe place on which to do their work.
For six years the defendant’s agent, Pool, had known of the existence of this dangerous condition. He had frequently discussed it with the plaintiff’s superintendent, and because of such danger had for years refused to ascend the ladder himself, obtaining the services of another when going up the ladder was necessary.
The fact that the defendant did not create the dangerous condition does not excuse it of negligence in the matter. It knew the condition existed, and by failure to see that it was abated concurred in its continuance and is jointly liable with the plaintiff for the damages resulting therefrom.
In the case of Brown v. Coxe Bros. & Co. et al., supra, suit was brought against two corporations for damages sustained by an employee of one of them through the primary negligence of the other. The complaint alleged in substance that the plaintiff, an employee of the Ketchum Steamship Company, while employed as a watchman on one of its vessels which was engaged in unloading a cargo of coal at the docks of and with the appliances and operatives of the other corporation owning and operating the docks at which the coal was being unloaded, sustained serious injuries from the falling of a coal bucket belonging to and being operated by the dock company, by reason of defective machinery and of negligence of said company.
The complaint further alleged that the Ketchum Company, by which the plaintiff was employed, had knowledge of such defects and mismanagement and did not warn him of the danger, which to him was unknown.
In passing upon the sufficiency of the complaint as a basis, of joint action against the two companies, the court said:
“ In this complaint it is alleged, in substance, against the Ketchum Steamship Company that it employed the plaintiff and placed him, without warning, at work in the place where he was exposed to the danger, which was unknown to him and well known to the employer. Proof of these allegations would clearly show such actionable negligence on its part contributing to the injury, and, under the rule above stated, would justify the joint action.”
*47 Counsel for the Government contend that the village of Harbor Springs was primarily at fault and have cited numerous authorities in support of the proposition that a tort-feasor who is primarily liable for an injury done is not entitled to indemnity or contribution from a cotort-feasor whose liability is secondary.
Under the act of reference, the court is not called upon to determine the comparative negligence of the.plaintiff and the defendant, nor to pass on the question as to the liability of one to the other on account of their respective negligent acts. The matter has been referred to the court for “ determination of the facts as to the liability of the United States as a tort-feasor on account of the death of the said Ernest H. Haynes.” For the reason that the sole question submitted is a determination of whether or not the United States was at fault, and a tort-feasor, we do not deem necessary a discussion of the question of the legal liability of one tort-feasor to another.
In the opinion of the court the facts show: (1) That the United States is liable as a tort-feasor because it knowingly permitted the ladder of its storm tower to be maintained in dangerous proximity to an unprotected high-tension wire, which rendered the use of such ladder unsafe and dangerous; (2) that the United States'is also liable because its agent, Pool, having knowledge of the danger involved in ascending such ladder, failed to inform the decedent, Haynes, of such danger, which to him was 'unknown.
If the United States were suable in actions of tort, the representatives of Haynes could have proceeded against the United States alone, or jointly against the plaintiff and the defendant, in the suit for damages occasioned by his death. Either the plaintiff or the defendant could have averted his death by the performance of its plain duty. The negligence of neither, of itself, would have resulted in his death had the other performed its duty. His death resulted from the combined negligent acts of both, consequently they are both tort-feasors in respect to the causes leading to his death.
Littleton, Judge] Green, Judge] and Booth, Chief Justice, concur.
*48 Whaley, Judge, did not hear and took no part in the decision of this case.
memorandum by the court on motion eor new trial
The defendant’s motion for a new trial herein is based wholly on alleged errors of law in the opinion of the court rendered October 30, 1930, no exceptions' being made in any respect to the court’s findings of fact.
It is urged:
1. The court erred in stating and holding the United States was a tort-feasor because it knowingly permitted the ladder of its storm tower to be maintained in dangerous proximity to the unprotected high-tension electric wire owned and operated by the village of Harbor Springs.
2. The court erred in stating and holding that Mr. Haynes was electrocuted as a result of the “ combined negligent acts ” of both the village of Harbor Springs and the United States.
3. The court erred in stating and holding that if the United States were suable in tort the representatives of the decedent could have proceeded and recovered jointly against the United States and the village of Harbor Springs.
4. The court erred in stating and holding that the United States is liable as a tort-feasor because one Mr. Pool, its alleged agent, had knowledge of the danger involved in an inspection of the tower by the decedent, which Pool failed to communicate to Mr. Haynes.
5. The court erred in stating and holding that the representatives of the decedent could have proceeded — i. e., brought an action for damages — against the United States alone, or jointly against the village of Harbor Springs, on account of the death of Mr. Haynes, if the United States were suable in tort.
6. The court erred in holding that the decedent would not have been electrocuted except for the imputed negligence of the United States.
7. If the court is of the opinion that it should transmit to Congress its conclusions, based on the facts found, that then and in that event the rule as to contribution or indem *49 nity between tort-feasors should, be considered, and it was error not to state the rule applicable in such cases.
We have given careful consideration to the numerous authorities cited by the defendant in its voluminous brief supporting the motion for a new trial, and have reached the conclusion that the authorities cited do not justify us in changing or modifying the views expressed in the original opinion. It is not deemed necessary in this memorandum to reiterate the views expressed heretofore, but it seems to us that if the facts are correctly stated in our findings, and the defendant in its motion does not challenge them, the conclusion is irresistible that the defendant was guilty of gross negligence in respect to the maintenance and operation of its signal tower, and that this negligence was a direct contributing cause in the electrocution of its employee, Haynes.
The fundamental error in the argument presented on behalf of defendant is that it assumes that the owner of real estate never becomes liable on account of a danger created on his premises by some other person or corporation. This is not the law. Nothing is more definitely settled than the principle that the owner of real estate is liable for an injury caused by a dangerous condition of the premises owned, which the owner has permitted to exist and known of for a long period, to the same extent as the owner would be if the danger had been created by him, or it, and this same rule applies to the party in control of premises under a lease. This is especially true where the person injured is the servant of the party in control of the premises. The law lays upon the master the positive duty under such circumstances to warn the servant of dangers of which the servant is ignorant but of which the master knows, or ought, in the exercise of reasonable care, to have known, and the failure of the master so to do is negligence. This principle is so well settled as to need no citation of authorities.
The defendant’s display man, Pool, was in charge of its signal tower at Harbor Springs and had been for a period of fourteen years prior to the death of Haynes. He was the only employee or agent of the defendant stationed at its *50 tower. His duties consisted in hoisting and lowering the proper flags; in making the night display of electric lanterns, and in making a weekly inspection of such lanterns to keep them properly cleansed and in working order. For six years prior to the death of Haynes, Pool had knowledge of the dangerous condition created by the close proximity of the plaintiff’s live high-tension wire to the ladder on the defendant’s tower. Because of such dangerous condition he had for years refused to ascend or descend the ladder for the purpose of making the necessary inspection of the lanterns, that work having been voluntarily performed by the plaintiff’s employee, Connell. Yet, notwithstanding this knowledge, Pool deliberately turned the keys of the tower over to the defendant’s employee, Haynes, knowing that he would necessarily have to go upon the ladder in making his inspection of the tower, without acquainting him in any manner of the danger he would incur. It is difficult to characterize in restrained language the conduct of Pool on this occasion. He permitted Haynes to go to his death unwarned of a danger, to him unknown. It was the undoubted duty of Pool to warn Haynes of this danger. His failure to do so was an act of gross, if not criminal, negligence.
It was the duty of the defendant to provide its employee (Haynes) a safe place to work in the performance of his duties. It was likewise its duty to warn him of the danger (which the defendant knew to exist) that imperiled his safety in the performance of his work, which danger was unknown to him. The defendant neglected and failed to fulfill those duties. Its negligence in that regard, combined with the glaring and admitted negligence of the plaintiff, caused the death of Haynes.
There is no legal liability on the part of the United States to reimburse the plaintiff or to contribute to it in any respect because of their joint responsibility for the death of Haynes. Whatever relief it may have must come through an act of Congress, not in the discharge of a legal obligation, but as an act of grace in recognition of a moral obligation, if it be thought such mor ah obligation exists. The facts as found and set out in-our original opinion, to which exceptions have
*51 not been filed by either party, will form the basis for whatever action Congress in its wisdom may deem proper. For this reason we have not thought it proper to undertake a determination of the comparative degree of negligence of the plaintiff and the defendant resulting in the death of Haynes, and have not discussed the rule as to contribution or indemnity of one tort-feasor to another.
The defendant’s motion for a new trial is overruled and denied. It is so ordered.